International, Inc. v. IJR Capital Investments, LLC. Okay, Mr. Schaefer? May it please the Court, my name is Christopher Schaefer and I'm here because my client made one very simple act. He filed an intent-to-use application for a trademark. Now the district court judge granted summary judgment motion for Viacom, eliminating and finding a trademark infringement. My client is guilty and liable for trademark infringement for doing no more than filing an intent-to-use application. This is not a cancellation, but it is trademark infringement. Now to get here is kind of fantastical. First the district court had to find that mere backdrop ornamental usage within a television show qualifies and passes the high threshold for a trademark. And two, the district court then had to go on and find a likelihood of confusion and cast aside the long jurisprudence of this circuit as well as the country and ignore that there is no context of use. Now in its findings, the district court made a critical but understandable mistake. It easily conflated various property rights in the children's cartoon show with Spongebob. Doesn't this really all come down to the issue of source identification, Mr. Schaefer? Yes, sir. That's exactly what it comes down to. And we're arguing, one, that Viacom has not proven, especially not to no fact issue at the summary judgment level, that its use of Krusty Krab and the mere words Krusty Krab, not the artistic expression of Krusty Krab as it's used within the TV show, qualifies as a trademark. Viacom has shown absolutely no evidence that it has used Krusty Krab alone. In fact, all of the evidence that Viacom shows shows that it is used within the Spongebob Squarepants universe, and that is all. This circuit already has well-established law for determining whether you have a trademark, and that is, would the consumers perceive this, first and foremost, to connect a source with a product or service? I don't know what a Krusty Krab is. I don't know what you can buy from a Krusty Krab. Tell us what's in the record. There were some surveys that were conducted. Is that right? Yes, sir. There was a survey, and that goes to the likelihood of confusion. And to that survey specifically, Your Honor, one, it was a mere association test, but we don't even have to get there, and if you'll allow me, I'd like to first address that they don't have a property right in Krusty Krab, first and foremost, and if you don't have a property right for trademark in the mere words Krusty Krab, then there can be no likelihood of confusion. That is well-established law in this circuit. Now, even to that survey, Your Honor, the survey does not consider context of use, and this circuit, as well as many circuits around the country, repeatedly hold that you must consider the context of use, because it is the overall impression, and it's not just the context of use by my client, but also the context of use by Viacom. Here, you have a cartoon with very peculiar colors, characters, shapes, and designs. Not only the fact that they've never used the mere words Krusty Krab, it's always part of the artistic expression, this cartoon backdrop that they use, and the district court referred to it as an ornamental backdrop. Now, our client, all he's done is filed an intent to use for the words Krusty Krab. We don't have a restaurant. We don't have a location. We don't have a theme. We don't have hardly anything, and yet, still, the court found a likelihood of confusion. Further, at summary judgment, we have at least raised an issue of fact here. The judge inferred an intent to copy on my client, because supposedly, after he created the word, he saw on a search that it popped up with SpongeBob SquarePants cartoons, but that belies the real reason that he created the word, which is also in the record. When they deposed him, he told them, when you do a seafood boil, the crust of the seasoning on top of crab is where he got the name, hence Krusty Krab. Now, we are looking for this court to hold simply the law that is well-established, one, you cannot get a trademark for mere ornamental backdrop use within a cartoon show. It must be used, and consumers must actually perceive it to primarily identify a source with a group of products and services. And two, that there can be no likelihood of confusion if you do not consider real context, because context can both distinguish as well as create a likelihood of confusion, where if you just mechanistically apply the rules, there would be none. And this court has said repeatedly, we do not mechanistically apply these tests. We look to their overall purpose, which is what would consumers actually perceive. Now, Viacom does not have a trademark in the simple words Krusty Krab. It's never used the mere words Krusty Krab. It's got a cartoon show. Within that cartoon show, there's an ornamental backdrop, which is this fictional restaurant of sorts. Viacom likes to claim that because SpongeBob has made lots of money, and that they have spent lots of money on SpongeBob, that this somehow translates to a trademark right in the mere words Krusty Krab. We cannot allow such an expansion of the law. The law is very clear. You have to use it as a trademark. And the law is also very clear. We do not look to the extent of money spent. We look to its effect. And if you look at the evidence presented by Viacom, it shows that they spend a lot of money on SpongeBob SquarePants. What about the Superman kryptonite case and the Dukes of Hazzard, the car? Yes, ma'am, Warner Brothers Regatta, Second Circuit case, 1981. In that case, the circuit court found that the group of symbols, which was intensely copied by the defendant, they purposely wanted it to look like the Dukes of Hazzard. They copied not the mere words, but the exact car, the color, the numbering, and the unique, I guess not unique, but the rebel flag symbol on the roof. Again, critical to its analysis was the fact that the defendants actually intended to draw on the goodwill created by the Dukes of Hazzard. Also critical to that is they did not grant a trademark right in the mere words General Lee. It was the fact that they stole the theme. This is akin to, say, two pesos or the Dallas Cheerleaders case. They stole a theme. The only thing we have is an intent to use application for the mere words Krusty Krab, which, by the way, are suggestive of a seafood restaurant, okay? Now, the other cases, the D.C. cases, they like to bring up D.C. versus Powers, the Daily Planet case. Again, that one, that's just a district court. That is not a, was, the opinion was not written for precedential purposes. I don't know exactly how D.C. Comics actually used the Daily Planet. But critical in there was they did not say they have a trademark right in Daily Planet, but there was a likelihood of confusion because the newspaper, the real one that was created, Daily Planet, copied the symbol of the Daily Planet from the comic exactly. It used drawings from Superman. It had articles about Superman. And that this totality, this copying of the theme in context, is what created a likelihood of confusion. We have none of that here. All we have is an intent to use of mere words. That is absolutely all that we have. Well, we have an intent to open a restaurant, a building with the name Krusty Krab. It's not like you're creating crumbs to put on a grocery market shelf in a little box that says Krusty Krab. Correct, Your Honor. We do hope at some point to open a restaurant with, entitled the Krusty Krab. But we don't know what it would be like yet. We have not been able to get that far because as soon as we filed the intent to use, Viacom filed the suit and my client put on hold all of his further business pursuits. We don't know where it will be. We don't know what the look will be. And let's be clear here. So you're saying you can build a restaurant and put Krusty Krab on the outside as long as it looks different from the cartoon drawing of the Krusty Krab restaurant in square... I can't keep all this straight. I know exactly what you mean. Yes, Your Honor. As long, again, the ultimate test, would consumers be confused? And we've at least raised a fact issue, we think as a matter of law, that you cannot at this stage find a likelihood of confusion when there is no context of use. This court held in Elvis v. Capice that the context was critical. In fact, overruled for erroneous error the district court because the district court did not consider the context appropriately. In that case, a bar wanted to open called the Velvet Elvis and within the bar was tons of Elvis paraphernalia. It was those facts that enabled this circuit to find a likelihood of confusion. Further, in the Conan Pizza case, the only reason the name Conan Pizzeria was found to infringe on Conan the Barbarian is because within the pizza, the restaurant was riddled with nothing but Conan the Barbarian paraphernalia, movie posters, statues, and the like. We would submit that had that restaurant here, instead of having Conan's Pizza with Barbarian paraphernalia, had they had, say, I don't know, orange hair and a talk show host theme and maybe some Simpsons reference, it wouldn't be Conan the Barbarian arguing for trademark infringement, it'd be Conan O'Brien. Context is critical to these analysis. And it's further important that we should not put a huge chilling effect by allowing someone to be liable for trademark infringement for doing no more than filing an intent to use. What relief, then, are you seeking here on appeal? I understand that you don't like the summary judgment. What would we tell the district court to do if we were to agree with you? Multiple holdings, Your Honor, only one of which we need to win this appeal. We would like this court to hold, as a matter of law, that you cannot have a likelihood of confusion without considering context. And if there is no context to consider, the case is not ripe for adjudication. So you're asking, what are the consequences in the real world of a finding that there's been a trademark infringement? You can't build the restaurant? What else? I'm sorry? What are the real world consequences of the finding that there's been trademark infringement? Oh, my client would be found guilty of trademark infringement. He would have an injunction against using it in all forms, and he would be liable for any damages. We have not reached that state. So is this an interlocutory appeal? No, ma'am. What do you mean we haven't reached the stage of damages? We don't know what the damages are. Who's alleged that there were damages? I'm sorry, Your Honor? Who has alleged that there are damages? Viacom, I presume. I don't know the exact... Is there a pleading out there that says, is there another lawsuit? I don't understand. Are damages involved in this lawsuit or any other lawsuit? This is the only lawsuit that I'm aware of, Your Honor. Are damages involved? There's a permanent, excuse me, an injunction to prevent his use is the main one that I'm aware of, Your Honor. Are damages involved or not? Not that I'm aware of. I don't know. They would be in the pleadings. So the consequence is you don't get to build the restaurant and call it Krusty Krab? Yes, ma'am. That would be one of the consequences. What others are there? If they were to pursue damages, we'd have to litigate whether there were damages, in fact. Because he has not used it, I can't imagine there being any harm at this stage. So to my knowledge, it would only be the permanent injunction and the impairment of his freedom to use it. But there would also be, if he were to lose this case, the chilling effect. Because what we would have done is set the standard that if you file an intent to use, you can be found and hauled into court, not to cancel your trademark, but for trademark infringement. And that carries a much bigger weight and kind of undermines the very purpose of having an intent to use function at the federal level. Further, if this court were to actually find in favor of Viacom, it would require that they allow a trademark for mere ornamental background use within a cartoon show and completely abandon it. Well, I thought they had products with Krusty Krab, like something for the aquarium that looked, you know, as the restaurant with Krusty Krab on it and other things. Yes, ma'am. They do sell Spongebob. They have licensed products with Krusty Krab on the name on products. Yes, ma'am. Two points to that. First, their products are Spongebob products. And if you look at all of their evidence, and we've highlighted many of them, and would love for them to bring any product that does not have, that uses Krusty Krab as a source identifier. All of their products, such as the Monopoly box. Well, you rely on Paramount Pictures versus Romulan. And they said, well, if you'd marketed the Romulan thing more, you might have a cause of action. They just said there wasn't evidence that they made a big deal out of Romulan, the Star Trek people. I didn't say you couldn't have. There's no way, no how. Could you? Yes, Your Honor. And if they used Krusty Krab correctly, they could do it. But they don't. It has to be, first and foremost, to distinguish a source of underlying goods and services, not name the product. And that's what it is. Everywhere they use it, it's entitled Spongebob. And I see my time is out, if I may finish. But they don't even use the words of the product. Sometimes it's just a replica of this artistic background expression. They don't. And again, the test is, do consumers use it, first and foremost, to identify source, not describe the product? Thank you very much. When I, this is just a question on the Court's time, because you've saved your full time for rebuttal. But when I ask you about what relief you were seeking, I expected you to say, among other things, that you would want a jury trial on source identification. But it sounds like, from your answer, that you're saying that's a question of law, not a question of fact. So it's not subject to a jury trial. Explain that to us. Not at all, Your Honor. Whether there is a trademark first is a question of fact for a jury. We think that you can find, as a matter of law, that they have not met, they have not provided any facts so no jury could conclude. In other words, summary judgment in favor of us. No jury could conclude that this would be perceived as a trademark because they have provided absolutely zero use where it is used in a trademark and not to describe it, a product such as the Spongebob Monopoly and Spongebob movie and Spongebob cartoon. I cannot buy a Krusty Krab anything. It's a Spongebob and it may depict the Krusty Krab, in which case it's merely describing it. Thank you, Your Honor. So again, I'm trying to understand where we are here. I thought this, I thought your case was built largely on fact issues and that this is not ready for summary judgment because there are issues to be determined by a fact finder. Tell us whether there are issues to be determined by a fact finder or if not, why not? Yes, Your Honor. At the very least, if you don't think that we win as a matter of law because they have not proven anything to our side, we've at least raised the issue that a jury would also agree with us that they don't find it to be a trademark. And therefore, it is a fact issue. And I'd like to close with a quote from McCarthy that this court has used several times. If it is not readily apparent from its use that it is a trademark, then it is not. One question. Yes, ma'am. I should know this. I can't keep these cases straight. Did you file a cross motion for summary judgment as a matter of law? Yes, we did at the district court level.  All right, you've set a time for rebuttal. Thank you, Mr. Sherry. Thank you very much. Mr. Milleen? Thank you. Good afternoon, and may it please the court. I'm Steve Milleen, counsel for Viacom, the plaintiff below, and appellee here. I want to start by correcting some facts that are not in dispute. The Krusty Krab is not a backdrop, and it's not ornamental. It's the central ingredient of the SpongeBob SquarePants show. It's the restaurant in the show where SpongeBob works, and it appears in over 80% of the episodes. The reason we're here is because IJR thinks that they can open a real life restaurant and call it the Krusty Krab. This is a straightforward case of trademark infringement and unfair competition. It involves exactly the type of conduct that trademark laws are designed to stop. Judge Miller properly granted summary judgment for Viacom on its federal unfair competition claims and its common law state trademark infringement claim. The undisputed facts overwhelmingly support the district court's conclusion on both elements of those claims. One, that Viacom has strong and protectable rights in the mark, the Krusty Krab, and two, that there's a likelihood of confusion. The ruling below that Viacom owns a valid trademark in the Krusty Krab is not an extension of trademark law, as IJR suggests, nor does it present issues of first impression. There are two independent bases that fully support the district court's opinion on this point. First, the district court correctly found that Viacom has established ownership through its sales and licensing of consumer products. Indeed, Viacom has used the Krusty Krab mark through licensees who have made extensive sales of authorized Krusty Krab products. Judge Owen, you mentioned the aquarium, which is a replica of the Krusty Krab restaurant from the show. It appears in its form that it appears in the show, and it makes bubbles in your aquarium. There's a cake topper that's the Krusty Krab. These are the names of the products. The sticker packages and the play sets at page six and seven of our brief are other examples, and there's many other products. He says in every one of those instances, SpongeBob is on there as well. I believe that in the vast majority of them, SpongeBob is on there as well. There are some t-shirts that are sold at Universal Studios that just have the Krusty Krab without SpongeBob, I believe. But again, those are in the record. We cited a case in our brief. We cited a number of cases in our brief involving house marks. It's simply not the case that because SpongeBob is on there, that means Krusty Krab is not a mark. If that were the case, Kellogg's Pop-Tarts, which is one of the cases in our brief, Pop-Tarts is certainly a mark, and it always appears with Kellogg. There are several other examples we gave of that. The Bridgestone Forenza tires, pretty much any product mark for a company that has a strong house mark is going to have multiple marks on the product. So that doesn't get them there. So the second basis is the Krusty Krab is a central ingredient, or as the district court put it, a recurring element of the wildly popular SpongeBob SquarePants show. Courts have long recognized and protected trademark rights in such fictional elements of entertainment media. You mentioned the Second Circuit's Warner Brothers case from 1981 about the Dukes of Hazzard car, the General Lee. It has an interesting quote. They said, trademark protection has been held to extend to the specific ingredients of a successful TV series. It's exactly what we have here. Other good examples are the Superman cases that you mentioned, particularly the Daily Planet that I'll discuss a little bit more in a second here, and the Kryptonite cases. In this court's Conan's Pizza case, it did have issues of they copied other elements of that, but that case recognized that cartoon characters are used in licensing programs to promote everything from children's toys to fast food restaurants, and that many consumers expect such endorsements and act favorably towards them. So either of these bases is sufficient on its own to establish that Viacom has protectable rights in the mark, the Krusty Krab. It does identify the source of goods and services that Viacom provides, and together both bases cement Viacom's mark in the mind of consumers. On this point about the validity of the mark, I'd like to briefly highlight three important cases. First is that DC Comics Powers case that I mentioned involving the Daily Planet. It's at page 19 to 20 of our brief. It's a 1978 case from the Southern District of New York, and it is a published opinion. I don't know of any indication that it was not for precedent, so I'm not sure what that reference was about. He just meant that it's a district court opinion, so it doesn't have binding precedential value beyond just the parties to that case. I will take that as what he meant, that it's certainly, and I'm certainly not arguing it's binding, but I think it's very persuasive authority given the strong factual similarities here. Number one, the Daily Planet is where Superman works. The Krusty Krab is where SpongeBob works. Both are unregistered common law marks that are central ingredients of their respective shows. The court emphasized that the Daily Planet played a key role in the development of the Superman character. Similarly, the Krusty Krab plays a role in SpongeBob's character development. He spends a lot of time there at work, has a lot of crazy antics, and as I mentioned, it appears in over 80% of the episodes. The defendant in that case used the mark for a newspaper called the Daily Planet, so it was a fictional paper versus a real-life paper. Here we have a fictional restaurant versus a real-life restaurant. The second case I'd like to mention is this court's Smack Apparel case, which I know Judge Reveley and Owen will remember well. That's another case acknowledging common law trademark rights in elements that the public identifies with the trademark owner. In that case, it was color schemes and other indicia of a school's football team. This court affirmed summary judgment of trademark infringement based on a likelihood of confusion. We believe the court should do the same thing in this case. Finally, I want to point out, Judge Owen, you mentioned the Romulan Invasions case that Appellant relies on pretty heavily. It's a 1988 Trademark Trial and Appeal Board case. A few years later, in 2005, the Trademark Trial and Appeal Board came out with another decision. It's another kryptonite case, DC Comics versus Pan American Grain Manufacturing Company. The cite for that is 77 USPQ 2nd 1220. The reason that that's important is that the applicant in that case made the same argument. They argued that Romulan Invasions stands for the proposition that earlier use of a term as an element of a literary work does not establish trademark use. The board rejected that argument and said that the Romulan Invasions case does not extend to any sort of general principle like that. They noted that opposers marked kryptonite had been the subject of trademark licensing agreements and had been used as a trademark pursuant to such licenses on products, just like we have here. Now, I want to make clear that the kryptonite case, this DC Comics case, also involved registered marks, so that is a difference in that case. But it clearly rebuts the idea that Romulan Invasions means you can never have trademark rights in an element of a television show. I'd also like to point out that the Krusty Krab is a peculiar name for a restaurant. Krusty is not really an appetizing word and spelling crab with a K certainly doesn't denote fine dining. In fact, I believe that this strange name and spelling is what makes it fit so well in the SpongeBob universe. This is, after all, a show about a talking sponge. That show became a cultural phenomenon, making literally billions of impressions, spawning two major motion pictures and a live musical, which, by the way, is now on Broadway. A whole generation of children and their parents have grown up watching it over the last 18 years. And the Krusty Krab, where SpongeBob Squidworth and the owner Mr. Krabs work making Krabby Patties, is a central element of that show. It's so important to the show that time.com named the Krusty Krab one of the 18 most influential fictional companies of all time. So now when people hear the name the Krusty Krab, particularly in connection with a restaurant, many of them think of SpongeBob. Judge Miller recognized this. He analyzed the undisputed facts showing Viacom's widespread usage of the Krusty Krab and correctly determined that it acquired distinctiveness as a valid trademark of Viacom. He did not engage in any kind of a discussion about source identification, though, did he? He did not explicitly reference source identification, but he did recite cases that talk about the purpose of trademarks to identify source. But wouldn't that be a, excuse me, I don't mean to cut you off, but I mean, wouldn't that be a pretty serious flaw in the opinion? I don't understand how this area of law can be examined in the context of this case without thoroughly looking into the whole concept of source identification. Source identification is a, it's a legal determination that you need to make based on the facts that are at issue. And you don't hear a lot of trademark cases going into a lot of analysis over, was this a source identifier? The question is, was it used in a manner consistent with the trademark and would the public perceive it as being, as identifying the product and connecting it to a particular company? And in fact, by finding that Viacom had secondary meaning in the mark, he in fact did find that consumers identify that mark with a single source. That's what secondary meaning is. And that's acquired distinctiveness as a synonym. So, I mean, we may be arguing about syntax or about semantics of whether he specifically said, and I find it has a source identifying function, but by finding that it had secondary meaning, he did implicitly find that it identifies Viacom, as it identifies a single source as the maker of that product. In this case, Viacom. So having established a protectable mark, the next question the district court correctly addressed is the likelihood of confusion. If IJR were to carry out its threat to open a restaurant, there is no doubt that a significant and actionable number of consumers would be confused. They would think that it's licensed or otherwise affiliated by SpongeBob. The district court correctly found that if you were to open a restaurant and call it the Krusty Krab, a lot of people would expect that to be connected with SpongeBob. Dr. Blair's survey proved this point, measuring 30% net confusion, and the district court properly credited those results. Dr. Blair is a very experienced expert. You can see his report. His surveys have been relied on by courts in this circuit and elsewhere, as detailed in our briefing. He independently designed this survey to measure the likelihood of confusion. IJR chose not to depose him. IJR did not hire an expert of their own. They didn't present a survey of their own, and they didn't even present an expert to criticize him. Their criticisms are purely attorney argument, and Dr. Blair is far more qualified than any of us to opine on what constitutes a good likelihood of confusion survey, and he did that in this case. The district court also analyzed each of the eight likelihood of confusion factors. Determine that all of the factors support a likelihood of confusion, and indeed, the incontrovertible evidence establishes a likelihood of confusion in this case. One point I'd like to clarify from Apelli's reply brief and the oral argument that Mr. Schaffer made just now, is we have never said that context is unnecessary. We absolutely agree with the district court who said, and I quote, context here is critical, because a consumer seeing either Viacom's or IJR's marks will likely think of a restaurant. And I would say that in making that finding by saying that consumers who hear the Krusty Krab will likely think of a restaurant, the judge was affirming that connection that consumers have, that anything named the Krusty Krab is going to be a restaurant, and the only Krusty Krab restaurant is the one in SpongeBob. So I believe that ties into the source identifying concern that you had as well. So any claim that Viacom or the district court did not consider context is baseless. The same context defeats another argument that Appellant makes, and that is that Viacom is seeking, or the district court gave us, absolute trademark protection in any context. Again, the context is Appellant wants to open restaurants named the Krusty Krab. We're not talking about a used car lot or some other completely unrelated business, but the exact same type of business as the fictional restaurant, the Krusty Krab. So since Viacom has a valid mark, and since IJR's threatened use of that mark is likely to cause confusion, both elements of Viacom's claims are met, and the district court properly granted summary judgment. I do want to note that there's a little more going on here than just an intent-to-use application. In fact, there were several newspaper articles quoting Mr. Ramos of IJR. Are you going outside the record? Is this in the record? No, Your Honor, it is in the record. It is in the record? It is in the record, yes. What I was about to mention are some letters that were attached as Exhibits 1 and 2 to our complaint. Those are in the record very early on, and those themselves reference the newspaper articles that alerted our client to the idea that Mr. Ramos was planning to open these restaurants. Also in the record is he completed a lease in California, and he bought restaurant equipment. He didn't simply file an intent-to-use and then sit back and say, I wonder if anyone's going to care about this. He was actively making preparations to open a restaurant. Judge Owen, with respect to your earlier question about damages, where there may have been some confusion there, is in our complaint, we did make a claim for damages based on the assumption that he was going to go forward and open his restaurant, and that we would be seeking damages. Certainly, we would not argue that any damages have accrued as long as he does not use the mark. So he doesn't need to worry about, you know, facing a judgment from Viacom or trying to get some disgorgement of profits that don't exist. Well, if he opened a restaurant with Krusty Krab with CC, would you object? You know, that's a question that the district court asked me, and I'll tell you the same thing I told him. That would be a different case. I think we would have to analyze that. I would say very bluntly that it would not be nearly as strong a case as this one where he used it with two Ks. There's an interesting footnote in the district court's opinion about the relative aesthetic pleasing value of Cs versus Ks. But anyway, it would be a different case. I certainly think spelling it with two Ks is much more egregious. Lastly, I'd like to address Viacom's dilution claim. There was some discussion in both of the appellant's briefs about the fact that the district court dismissed Viacom's dilution claim. I'm sorry, denied summary judgment on the dilution claim and then Viacom voluntarily dismissed it. That's true, but the denial was not based on any sort of substantive determination about our rights, like that the Krusty Krab mark was not famous. Instead, he denied summary judgment on the basis that because they had not used the mark yet, there was no dilution to find actionable. We did agree to dismiss the claim because as long as he's not using it, excuse me, we're not worried about any dilution. But that dismissal does not impact any substantive issues in this case. That's all that I feel like I really need to cover. I would be happy to answer any questions you may have or cede my last two minutes. Thank you, Mr. Milleen. Mr. Schaffer, you saved time for a bottle. Your Honors, I'd like to start with what exactly we're asking for. And that is a ruling that we can get sent back to the district court that they do not have at this, that Viacom has not proven to pass summary judgment and ownership right for trademark in the mere words Krusty Krab.  that Viacom has not proven to pass summary judgment that Viacom cannot prove likelihood of confusion without considering relevant and tangible context of use. At the very least, we have, we believe, if you don't want to rule in that explicit manner that we've raised a fact issue, that this should go to a jury. Now, what is this? This being one, that they have a trademark right in the Krusty Krab or two, that there's a likelihood of confusion absent relevant context. And this is something I'd like to bring up as well, this relevant context. Mr. Milleen referenced LSU versus SMAC. And in that case, this circuit held that it wasn't just the mere colors of use on the clothing. It was also the fact that they were using it with an intent to refer to the different colleges and that these colors did in fact refer to the colleges. It wasn't just clothing in purple and gold. It was purple and gold clothing that involved football scores, LSU's football schedule, and other context that referred to the school. Now, Viacom asserts that it uses Krusty Krab because it's involved in a product. But that is not a trademark use. It must, the consumer must perceive in a distinctly commercial manner that it is connected between a source and a product. It cannot be the product itself. And that's their only use. In fact, more than that, sometimes these products don't even have the words Krusty Krab on the box. They don't mention it at all. Take their example of the Monopoly game. It's entitled SpongeBob Monopoly, very clear right there on the front packaging. Nobody's gonna go buy a Krusty Krab Monopoly because it doesn't exist. Its use within the board game in this instance cannot qualify because no consumer could use that to distinguish the good. They don't know until they've already purchased it. And that applies to all of their products. They have to prove that the primary, not just it's associated with, but the primary meaning is that it is used to connect a source with an underlying good and service. And they have not proven that. Further, they want to ignore the context that their artistic expression, which the mere words have never been used absent these drawings, is a fictional restaurant with a color scheme under the water. We would assert, and any jury would see, that if we didn't have the same color scheme, if we didn't have anything at all relating to SpongeBob, that no one would presume these suggestive words for a seafood restaurant, Krusty Krab, would refer to the TV show. And he brought up, or Judge Owen, you brought up about using Cs for Krusty Krab. We run into a difficulty there. If we use Cs, then Krusty Krab becomes descriptive or potentially generic, in which case we cannot obtain a trademark in those words. We use the Ks because they're aesthetically pleasing and they allow a suggestive mark, which is protectable. Now, they mentioned that they have licensed Krusty Krab, but they have provided zero evidence that those licenses are explicit trademark use for the mere words Krusty Krab. At best, those are the right to copy things from the SpongeBob universe. They have shown no use absent to SpongeBob, yet they want us to perform an analysis under the likelihood of confusion where they only have Krusty Krab. Their own survey by Dr. Blair, several of those interviewed asked, is this a real thing or fictional? One is even quoted as saying, if it's real, then I have no idea. It is a mere word association test. They did not mention that this would be real. They did not show in any way that there was nothing akin to SpongeBob SquarePants. This court has held routinely that mere word association tests are not applicable. And as recently as Amstar versus Domino's Pizza, where they presented a Domino's Pizza box and asked, what do you think this refers to? And then people with 70% mentioned Domino's sugar and the court said, that is an incorrect test. I see that my time is up. Thank you very much. Yes, thank you, Mr. Schaffer. Your case and all of today's cases are